FILED

08 SEP -4 PM 3:44

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

1  LAW OFFICES OF TODD B. SEROTA
   TODD B. SEROTA, State Bar No. 109875
2  1601 N. Sepulveda Blvd., #793
   Manhattan Beach, California  90266
3  Telephone:  (310) 798-2004
   Facsimile:   (310) 798-7273
4  Email:       tserota@alum.mit.edu

5  Attorneys for Plaintiff The Mazepink Family Trust

6

7

8              UNITED STATES DISTRICT COURT

9         FOR THE SOUTHERN DISTRICT OF CALIFORNIA

10

11 THE MAZEPINK FAMILY TRUST, a    Case No. '08 CV 1624 WQH LSP
   California Family Trust
12
                 Plaintiff,
13
        v.                                              BY FAX
14 DONALD T. WARGO, an individual          VERIFIED COMPLAINT FOR:
   residing in Pennsylvania; and DOES 1
15 through 10                                1) BREACH OF CONTRACT;
                                                AND
16               Defendants.                 2) FRAUD AND DECEIT
17
                                            DEMAND FOR JURY TRIAL
18

19        Plaintiff The Mazepink Family Trust ("Plaintiff" or "MFT"), for its

20 complaint alleges, upon personal knowledge with respect to itself and its own acts,

21 and upon information and belief as to all other matters, as follows:

22                      **JURISDICTION AND VENUE**

23        1.     This Court has diversity jurisdiction under 28 U.S.C. §1332 in that

24 Plaintiff and Defendant are citizens of different states and the amount in

25 controversy exceeds $75,000.00.

26        2.     Venue is proper in this judicial district under 28 U.S.C. § 1391(a) in

27 that a substantial part of the events or omissions giving rise to these claims

28 occurred in this judicial district and the Paragraph 7.7 of the contract involved in

ORIGINAL

1  this action specifies that this district is the sole proper venue for this action and that

2  each of the parties to the contract submits to the personal jurisdiction of this Court.

3

4  ## THE PARTIES

5    3.    Plaintiff MFT is a California Family Trust located in this judicial

6  district at 7350 Escallonia Court, Carlsbad, CA 92011.

7    4.    Plaintiff is informed and believes, and on that basis alleges, that

8  Defendant Donald T. Wargo ("Defendant" or "WARGO") is an individual who

9  resides in Pennsylvania.

10    5.    The true names and/or capacities, whether individual, corporate,

11  associate or otherwise, of Defendants named herein as Does 1 through 10,

12  inclusive are unknown to Plaintiff, which therefore sues said Defendants by said

13  fictitious names, and Plaintiff will amend this complaint to show their true names

14  and capacities when the same have been ascertained. Plaintiff is informed and

15  believes, and on that basis alleges, that each of said Defendants designated herein

16  as Doe participated with one or more of the other Defendants named herein to

17  commit the acts alleged herein, and as a result, has caused damage to Plaintiff.

18  Where applicable, the term "Defendant" shall be deemed to include appropriate

19  Doe Defendants.

20

21  ## BACKGROUND FACTS

22    6.    As of June, 2006, Plaintiff owned 500,000 shares of common stock in

23  a company called Therapheresis, Inc. ("Therapheresis"), a Delaware corporation.

24  Therapheresis was and is a privately held company, so there is no open market for

25  the company's shares. Therefore the group of people to whom Therapheresis

26  shares may be sold was and is very small. In or about June, 2006, Plaintiff asked

27  Defendant if Defendant was interested in purchasing Plaintiff's Therapheresis

28  shares. As of June, 2006, and at all times thereafter, Defendant was and is also a

shareholder in Therapheresis, which made him eligible to buy Plaintiff's shares.

Verified Complaint For 1) Breach of Contract; and 2) Fraud and Deceit

Plaintiff is informed and believes, and on that basis alleges, that Defendant owned in June, 2006, and still does own, more Therapheresis shares than Plaintiff.

7.    By April, 2007, Plaintiff and Defendant agreed that Defendant would purchase 400,000 of Plaintiff's Therapheresis shares for $0.75 per share, for a total purchase price of $300,000.

8.    Effective April 27, 2007, Plaintiff entered into a contract with Defendant ("Purchase Agreement," attached hereto as Exhibit 1) in which Defendant purchased from Plaintiff 400,000 of its 500,000 Therapheresis shares for a purchase price of $0.75 per share, making the total purchase price $300,000.00. Paragraph 1.2 of the Purchase Agreement specifies that $50,000.00 of the purchase price was to be paid within three days of receipt by Defendant of the executed Purchase Agreement. This $50,000.00 was paid by sending a check via overnight courier on April 30, 2007. The remaining $250,000.00 was secured by a promissory note ("Promissory Note") signed by Defendant that is attached to the Purchase Agreement as Exhibit A and which is incorporated therein by Paragraph 7.13 of the Purchase Agreement. The Promissory Note says in no uncertain terms that Defendant promises to pay the sum of $250,000.00 to Plaintiff. Of this $250,000.00, $50,000.00 was paid in May, 2007, leaving a balance due on the note of $200,000.00. Paragraph 1 of the Promissory Note provides for simple interest at the rate of 4% per annum.

9.    Plaintiff is informed and believes, and on that basis alleges, that subsequent to the execution of the Purchase Agreement, Plaintiff's 400,000 Therapheresis shares, including approximately 266,667 shares for which Defendant never paid, were transferred to Defendant prior to July, 2007, and are currently held of record by Therapheresis in Defendant's name.

10.    Paragraph 1.2 of the Purchase Agreement also specifies that if Defendant does not pay off the entire Promissory Note by September 30, 2007, Plaintiff has the option of selling any shares not paid for by Defendant to another party. Paragraph 3 of the Promissory Note similarly says that if Defendant defaults

on the note, Plaintiff has the right to sell any stock for which Defendant has not paid. Nowhere in the Purchase Agreement or the Promissory Note does it say that selling stock for which Defendant has not paid is Plaintiff's sole remedy.

11.    On September 18, 2007, Defendant made an interest payment to Plaintiff in the amount of $3,700.00.

12.    Defendant did not pay off the remaining $200,000.00 by September 30, 2007. Several times after September 30, 2007, Plaintiff inquired of Defendant when he would pay off the overdue Promissory Note. When payment was not forthcoming, at least once Plaintiff indicated to Defendant an intention to try to sell the remaining 266,667 shares for which Defendant had not paid to other buyers pursuant to Plaintiff's option under Paragraph 1.2 of the Purchase Agreement and Paragraph 3 of the Promissory Note. Defendant, however, promised that he would pay the $200,000.00 still owed for the shares as soon as Defendant was able and at least once asked Plaintiff not to sell the shares to anyone else. Defendant mentioned a real estate refinance deal that would provide him with the necessary funds when concluded. Specifically, from September 30, 2007 to the middle of April, 2008, Defendant made statements to the following effect to Plaintiff with regard to paying off the Promissory Note: 1) "If you will just be patient;" 2) I am a man of my word and I'm telling you I will pay for the stock as promised;" 3) I always have a plan, and a back-up plan to that;" 4) I never go back on my word;" and 5) "Even if people who owe me money don't pay and my real estate refinance deal doesn't happen, I always have a way to honor my commitments." Plaintiff relied on Defendant's promises and acceded to his request not to sell the shares to a third party. Additionally, the shares were in Defendant's name, so Plaintiff would have been unable to sell them to anyone even if he had not relied on Defendant's promises and acceded to his request.

13.    On February 11, 2008, in response to another inquiry from Plaintiff re payment, Defendant left a voicemail message for Plaintiff on Plaintiff's cell phone. In the message, Defendant again promised to pay the balance due on the

Promissory Note, representing that his real estate refinance deal would be concluding shortly and that he should have the funds to pay off the Promissory Note by the end of that month.  Plaintiff relied on this promise and again did not seek to sell the remaining 266,227 Therapheresis shares to anyone else at this time.

14.    On February 26, 2008, Plaintiff sent Defendant an email again inquiring about payment.  Plaintiff said he believed that Defendant had every intention of paying off the Promissory Note and interest, but stated that the note was six months overdue.  Plaintiff is not aware of any response to this email.

15.    On March 6, 2008, Plaintiff sent Defendant another email, again noting that the note was six months overdue, and noting that two months prior, Defendant had promised to bring interest on the Promissory Note current.  On or about April 4, 2008, Defendant made another interest payment to Plaintiff in the amount of $5,000.00, but has not paid any interest subsequent to that date.

16.    On May 12, 2008, Plaintiff's attorney sent a letter to Defendant demanding that Defendant agree to a firm payment schedule.  On May 27, 2008, Defendant sent a responsive letter in which he refused, saying that he would be better off buying the stock from a former Therapheresis employee, who Defendant claimed had offered to sell his stock for less money than Defendant had paid under the Purchase Agreement.  It became clear at this point that Defendant did not intend on paying for the remaining 266,667 shares he had purchased when he promised Plaintiff that he would pay for said shares and asked Plaintiff not to sell the shares to anyone else.

17.    Therapheresis is not doing well and Plaintiff is informed and believes, and on that basis alleges, that Plaintiff would now be unable to sell the remaining 266,667 shares even if they were in his name.

18.    Paragraph 7.2 of the Purchase Agreement provides that the prevailing party in any litigation for breach thereof is entitled to recover its attorneys' fees, costs and expenses.

## FIRST CLAIM FOR RELIEF

### (Breach of Contract)

19.    Plaintiff re-alleges and incorporates by reference the allegations of Paragraphs 1-18 of this Complaint as though fully set forth herein.

20.    Plaintiff has done all things required of it under the Purchase Agreement and Promissory Note and is in no manner or respect in breach thereof.

21.    Defendant has breached the Purchase Agreement and the Promissory Note, by not paying, and refusing to pay, Plaintiff the remaining $200,000.00 due to Plaintiff for Defendant's purchase of Plaintiff's remaining 266,667 Therapheresis shares.

22.    Defendant has also breached the Purchase Agreement and the Promissory Note by not paying interest due on the Promissory Note from April, 2008, forward.

23.    As a direct and proximate result of Defendant's breaches, Plaintiff has suffered and will suffer substantial monetary damage in a sum not presently susceptible to calculation, but which is believed to be at least $250,000.

## SECOND CLAIM FOR RELIEF

### (Fraud and Deceit)

24.    Plaintiff re-alleges and incorporates by reference the allegations of Paragraphs 1-23 of this Complaint as though fully set forth herein.

25.    As set forth in Paragraph 12 above, several times between September 30, 2007 and the middle of April, 2008, Defendant promised Plaintiff that Defendant would pay off the Promissory note and at least once asked Defendant not to sell to anyone else the 266,667 Therapheresis shares for which payment had not yet been received.  Plaintiff relied on Defendant's promises and acceded to his request not to sell the shares to a third party.

26.    As set forth in Paragraph 13 above, on February 11, 2008, Defendant again promised to pay the balance due on the Promissory Note, representing in a

voicemail message to Plaintiff that a real estate refinance deal would be concluding shortly and that Defendant should have the funds to pay off the note by the end of that month. Plaintiff relied on this promise and did not seek to sell the remaining 266,667 Therapheresis shares to anyone else at this time.

27.    Plaintiff is informed and believes, and on that basis alleges, that when Defendant made the promises referred to in Paragraphs 12 and 13 above, Defendant had no intention of performing them.

28.    Plaintiff is informed and believes, and on that basis alleges, that Defendant made the promises set forth in Paragraphs 12 and 13 above for the purpose of inducing Plaintiff to forbear from selling the remaining 266,667 shares of Therapheresis stock to anyone else.

29.    At the time the promises referred to in Paragraphs 12 and 13 above were made, Plaintiff was not aware of Defendant's intention not to perform them. Plaintiff justifiably relied on said promises and did not try to sell the remaining 266,667 shares of Therapheresis stock to anyone else.

30.    Plaintiff suffered and continues to suffer substantial damage as a direct and proximate result of Defendant's promises and Plaintiff's reliance thereon, at a minimum because Plaintiff lost the ability to exercise its option under the Purchase Agreement and sell some or all of the remaining 266,667 shares of Therapheresis stock.

31.    By his actions described herein, Defendant misled Plaintiff and thereby gained an advantage over Plaintiff to Plaintiff's detriment.

32.    Defendant's actions described herein constitute fraud and deceit.

33.    By his acts described in this cause of action, Defendant is also guilty of oppression, fraud and malice within the meaning of Cal.Civ.Code § 3294, thereby entitling Plaintiff to punitive damages.

Verified Complaint For 1) Breach of Contract; and 2) Fraud and Deceit

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

1.     For a finding that Defendant has breached the Purchase Agreement;

2.     For a finding that Defendant has breached the Promissory Note;

3.     For a finding that Defendant is guilty of fraud and deceit;

4.     For a finding that Defendant acted with oppression, malice and fraud and is therefore guilty of violating Cal.Civ.Code §3294.

5.     That Plaintiff be awarded its actual damages for Defendant's breach of the Purchase Agreement and Promissory Note, which are at least $250,000.00;

6.     That Plaintiff be awarded its actual damages due to Defendant's fraud and deceit;

7.     That Plaintiff be awarded punitive damages.

8.     That Defendant be ordered to pay to Plaintiff the costs of this action and attorney's fees incurred in relation to this action, in accordance with Paragraph 7.2 of the Purchase Agreement.

9.     That Plaintiff be awarded all such other and further relief as the Court deems just and proper.


DATED:  September 3, 2008          LAW OFFICES OF TODD B. SEROTA
                                   TODD B. SEROTA


                                   By _____
                                      TODD B. SEROTA
                                   Attorneys for Plaintiff, The Mazepink Family Trust

Verified Complaint For 1) Breach of Contract; and 2) Fraud and Deceit

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands trial by jury on all issues in this action so triable.

DATED:  September 3, 2008          LAW OFFICES OF TODD B. SEROTA
                                   TODD B. SEROTA


                                   By _____
                                         TODD B. SEROTA
                                   Attorneys for Plaintiff, The Mazepink Family Trust

Verified Complaint For 1) Breach of Contract; and 2) Fraud and Deceit

# **VERIFICATION**

I, David Mazepink, Trustee of Plaintiff The Mazepink Family Trust, hereby verify and declare under penalty of perjury that I have read the foregoing Verified Complaint and know the contents thereof, and that the matters contained in the Verified Complaint are true to my own knowledge, except those matters herein stated to be alleged on information and belief, and as to those matters, I believe them to be true.

I hereby verify under penalty of perjury that the foregoing is true and correct.

Dated:

9-3-08

_____
David Mazepink
Trustee, The Mazepink Family Trust

Verified Complaint For 1) Breach of Contract; and 2) Fraud and Deceit

EXHIBIT A

DATE: 4/30/07

TO: DAVID MAZEPINK
    FAX: (858) - 847 - 0880

Fr: DONALD WARGO
    FAX (610) - 995 - 0010
Re: STOCK PURCHASE AGREEMENT
    DATED 4/27/07

DAVID,
    ENCLOSED IS A FULLY-EXECUTED COPY
OF OUR          MUTUAL STOCK
PURCHASE AGREEMENT DATED 4/27/07

I HAVE ALSO SENT VIA USPS OVERNITE
AN ORIGINAL COPY OF THIS AGREEMENT AND A
CHECK FOR $50,000°° AS REQUIRED
BY THE AGREEMENT. BEST WISHES
                    Donald Wargo

## STOCK PURCHASE AGREEMENT

This Stock Purchase Agreement (the "Agreement") is made as of **April 27, 2007** ("Effective Date"), by and between **The Mazepink Family Trust**, a California **Family Trust** ("Seller") and **Donald T. Wargo**, an individual ("Purchaser"). Seller and Purchaser are individually referred to as a "party" and collectively as the "parties."

### RECITALS

**A.**    Seller owns 500,000 shares of the common stock of Therapheresis, Inc., a Delaware corporation (the "Company").

**B.**    Seller desires to sell to Purchaser, and Purchaser wishes to purchase from Seller, 400,000 of the shares of the Common stock of the Company owned by Seller on the terms and conditions set forth below.

Incorporating the above recitals, the parties, in consideration of the mutual and respective undertakings contained herein, and other good and valuable consideration, the receipt and sufficiency of which is acknowledged by each party, and intending to be legally bound, agree as follows:

**1.**    **Purchase and Sale of Shares: Closing.**

**1.1**    **Purchase and Sale of Shares.** Subject to the terms and conditions of this Agreement, Purchaser hereby purchases and Seller hereby sells and transfers to Purchaser, 400,000 shares of Common stock of the Company, representing 80% of his total shares of stock of the Company in exchange for payment in the amount of $.75 (Seventy Five Cents) per share purchased for a total aggregate purchase price of $300,000 ("Purchase Price"). The shares purchased pursuant to this Agreement are referred to hereafter as the "Purchase Shares."

**1.2**    **Payment of Purchase Price.** The Purchase Price shall be paid pursuant to the following: (a) $50,000 (Fifty Thousand Dollars) due and payable by check or Wire Transfer within three days of receipt by Purchaser of an executed copy of this Agreement and (b) a promissory note in the principal amount of $250,000, attached hereto as Exhibit A. Purchaser will make a payment of $100,000 as a partial payoff of the Promissory Note on or before August 1, 2007. Further, Purchaser will use his "best reasonable efforts" to payoff the entire $250,000 Promissory Note on or before August 1, 2007. If Purchaser does not payoff the entire $250,000 Promissory Note by September 30, 2007. Seller may sell any shares not paid for by Purchaser to another party. The amount of shares paid for by Purchaser will be calculated at the price of $.75 (Seventy Five Cents) per share divided into the total dollar amounts paid to Seller by Purchaser under this Agreement.

**1.3**    **Closing.** The purchase and sale of the Purchase Shares shall take place at a mutually agreed-upon location on the Effective Date or at such other time or date and place as the parties mutually agree upon, verbally or in writing (the "Closing"). The Closing may take place via the U.S. mail or other courier service, at the discretion of the parties.

**1.4**    **Consummation of Closing.** All acts, deliveries and confirmations comprising the Closing, regardless of chronological sequence, shall be deemed to occur contemporaneously and simultaneously upon the occurrence of the last act, delivery or confirmation of the Closing and none of such acts, deliveries or confirmations shall be effective unless and until the last of the same shall have occurred.

1

65677.1

**2.    Representations, Warranties and Covenants of Purchaser.**    Purchaser hereby represents and warrants the following:

**2.1    Authorization.**    This Agreement constitutes Purchaser's valid and legally binding obligation, enforceable in accordance with its terms. Purchaser has the absolute and unrestricted right, power and authority to execute and deliver this Agreement and to perform his obligations under this Agreement.

**2.2    Purchase Entirely for Own Account.**    The Purchase Shares are being acquired for investment for Purchaser's own account, not with a view to the resale or distribution of any part thereof.

**2.3    Disclosure of Information.**    Purchaser believes he has received all the information he considers necessary or appropriate for deciding whether to acquire the Purchase Shares. Purchaser further represents that he has had an opportunity to ask questions and receive answers from Seller regarding the Purchase Shares and the terms and conditions of the purchase of the Purchase Shares.

**2.4    Accredited Investor.**    Purchaser is an accredited investor as defined in Rule 501(a) of Regulation D, as amended, adopted by the SEC under the Securities Act.

**2.5    Investment Experience.**    Purchaser represents that he is experienced in evaluating and investing in securities of companies such as the Company and acknowledges that he is able to fend for himself, can bear the economic risk of his investment, and has such knowledge and experience in financial or business matters that he is capable of evaluating the merits and risks of the investment in the Purchase Shares. Further, Purchaser represents he has either (i) a pre-existing personal or business relationship with the Company or any of its officers, directors or controlling persons, or (ii) by reason of Purchaser's business or financial experience, or the business or financial experience of his financial, legal or professional advisors who are unaffiliated with and who are not compensated, directly or indirectly by the Company or any affiliate or selling agent of the Company, Purchaser is capable of evaluating the risks and merits of his investment and of protecting his own interests in connection with the acquisition of the Purchase Shares. Purchaser's investment in the Company hereunder is not material when compared to his total financial capacity. Purchaser acknowledges that his investment in the Company involves an extraordinarily high degree of risk, that he agrees he may have to bear the economic risk of his investment in the Purchase Shares for an indefinite period of time, and that he can afford the complete loss of his investment.

**2.6    Advice of Professionals.**    Purchaser has carefully considered and has been advised by Seller to have any material provided by anyone regarding the Company, including but not limited to this Agreement, related documents and the acquisition of the Purchase Shares reviewed by his legal counsel prior to acquisition, and to discuss with his professional tax and financial advisers the suitability of his acquisition of the Purchase Shares for his particular tax and financial situation, and he has determined the Purchase Shares are a suitable investment for him. Seller specifically disclaims any representations regarding the legal, tax, or financial consequences of the purchase, other than the representation this is a high-risk transaction.

**2.7    No Representations Regarding Future Results.**    It never has been represented, guaranteed or warranted by the Seller, the Company, or any of the officers, directors, shareholders, partners, employees, legal counsel, auditor or agents of the Company or its advisors, or any other persons, whether expressly or by implication, that the past performance or experience of the management of the Company, or of any other person, will in any way indicate the future results of the ownership of the Purchase Shares or of the Company's activities.

636771.1

**2.8    Restricted Securities**.  Purchaser understands that the Purchase Shares he is acquiring are characterized as "restricted securities" under the federal securities laws inasmuch as they were acquired by Seller from the Company in a transaction not involving a public offering and that under such laws and applicable regulations such securities may only be resold without registration under the Securities Act of 1933, as amended (the "Securities Act"), in certain limited circumstances. In this connection, Purchaser represents it is familiar with Securities and Exchange Commission ("SEC") Rule 144, as presently in effect, and understands the resale limitations imposed thereby and by the Securities Act.

**2.9    No Public Market**.  Purchaser understands that no public market now exists for any of the capital stock issued by the Company, and that neither the Company nor Seller has made any representations nor assurances that a public market will ever exist for the Purchase Shares.

**2.10    No Advertisement**.  Purchaser is not purchasing the Purchase Shares as a result of or subsequent to any advertisement, article, notice or other communication published in any newspaper, magazine or similar media or broadcast over television or radio, or presented at any seminar, or any solicitation of a subscription by a person not previously known to Purchaser.

**2.11    Legends**.  It is understood the certificates evidencing the Purchase Shares may bear one or all of the following legends:

(a)    "The shares represented by this certificate have not been registered or qualified under the Securities Act of 1933, as amended (the "Act"), or any state securities laws.  The shares may not be offered, pledged, assigned or otherwise transferred unless registered or qualified under the Act and applicable state securities laws or pursuant to an exemption therefrom and the Corporation receives an opinion of counsel satisfactory to the Corporation and its legal counsel that such sale, pledge, assignment or transfer is exempt from the registration requirements of the Act."

(b)    Any legend required by the laws of the State of California or any other applicable state.

**2.12    Acknowledgment**.  Purchaser acknowledges he understands the meaning and legal consequences of the representations and warranties contained in this Agreement, and he hereby agrees Seller and the Company may rely on each such representation and warranty.

**2.13    Survival**.  The foregoing representations and warranties shall be true and accurate as of the date of the Closing and shall survive the execution and delivery of this Agreement and the transfer of the Purchase Shares thereafter.

3.    **Representations and Warranties of Seller**.  Seller hereby represents, warrants and covenants the following:

**3.1    Title**.  Seller is the owner of all right, title and interest in and to the Purchase Shares, free and clear of any liens, encumbrances and security interests.

**3.2    Authority**.  This Agreement constitutes the legal, valid and binding obligation of Seller, enforceable against him in accordance with its terms.  Seller has the absolute and unrestricted right, power and authority to execute and deliver this Agreement and to perform his obligations under this Agreement.

**3.3    No Litigation**.  There is no action, suit, proceeding, or investigation pending or to the Seller's knowledge currently threatened against Seller that questions the validity of this Agreement or the right of Seller to enter into this Agreement, or to consummate the transactions contemplated hereby.

3

65677.1

**3.4    Survival.** The foregoing representations and warranties shall be true and accurate as of the date hereof and shall survive the execution and delivery of this Agreement and the transfer of the Purchase Shares.

**3.5    Warranties.** Seller represents and warrants that he has not assigned, hypothecated or transferred or purported to assign, hypothecate or transfer, in whole or in part, to any person, firm, entity, or corporation any claim, demand, right, damage, liability, debt, account, action, cause of action, or any other matter herein released or discharged pursuant to this Agreement.

**3.6    Survival.** The foregoing representations and warranties shall be true and accurate as of the date hereof and shall survive the execution and delivery of this Agreement and the purchase of the Purchase Shares.

**4.    State Securities Law.** The sale of the Purchase Shares, which are the subject of this Agreement, is intended to be exempt from registration or qualification under all state securities laws applicable to this transaction. The parties acknowledge this purchase transaction may be subject to additional limitations and restrictions based upon such laws and undertake and agree to cooperate with each other and with the Company in complying with any such state laws, including but not limited to promptly executing additional documents which are reasonably requested by the Purchaser or the Company. The rights of all parties to this Agreement are expressly conditioned upon compliance with applicable state securities laws.

**5.    Conditions of Seller's Obligations at Closing.** The obligations of Seller under this Agreement are subject to the fulfillment on or before the Closing of each of the following conditions by Purchaser:

**5.1    Representations and Warranties.** The representations and warranties of Purchaser contained in Article 2 of this Agreement shall be true on and as of the Closing.

**5.2    Delivery of Promissory Note.** The applicable Purchase Price in the form of the Promissory Note specified in Section 1.1 of this Agreement shall have been delivered to Seller.

**6.    Conditions of Purchaser's Obligations at Closing.** The obligations of Purchaser under this Agreement are subject to the fulfillment on or before the Closing of each of the following conditions by Seller:

**6.1    Representations and Warranties.** The representations and warranties of Seller contained in Article 3 of this Agreement shall be true on and as of the Closing.

**6.2    Delivery of Certificates.** The certificate(s) subject to purchase at the Closing shall have been delivered to Purchaser executed in blank or issued in the name of Purchaser or his designee.

**7.    General Provisions.**

**7.1    Amendments and Waivers.** Any term of this Agreement may be amended and the observance of any term of this Agreement may be waived (either generally or in a particular instance and whether retroactively or prospectively), only with the mutual written consent of the parties.

**7.2    Attorneys' Fees.** If either party brings a suit or other proceeding against the other as a result of any alleged breach or failure by the other party to fulfill or perform any covenants or obligations under this Agreement, then the prevailing party obtaining final judgment in such action or proceeding shall be entitled to receive from the non-prevailing party the prevailing party's reasonable attorneys' fees incurred by reason of such action or proceeding and all costs associated with such action or proceeding incurred by the prevailing party, including the costs of preparation and investigation. The

4

term "prevailing party" shall mean the party that is entitled to recover its attorneys' fees, costs and expenses in the proceeding under applicable law or the party designated as such by the court or arbitrator. In addition to the foregoing, in the event either party seeks to enforce this Agreement in any respect and as a result incurs attorneys' fees, costs and expenses other than by the bringing of any suit or other proceeding against the other party, whether by written demand or otherwise, the party seeking enforcement of the terms and conditions of this Agreement, including any indemnity obligations of a party, shall recover from the other party its reasonable attorneys' fees, costs and expenses incurred in connection with enforcing performance of the terms of this Agreement.

**7.3**   **Commissions or Finders' Fee**.   Each party represents that it neither is nor will be obligated for any finders' fee or commission in connection with this transaction. Purchaser agrees to indemnify and hold harmless Seller from any liability for any other commission or compensation in the nature of a finders' fee (and the costs and expenses of defending against such liability or asserted liability) for which Purchaser is responsible. Seller agrees to indemnify and hold harmless Purchaser from any liability for any other commission or compensation in the nature of a finders' fee (and the costs and expenses of defending against such liability or asserted liability) for which Seller is responsible.

**7.4**   **Construction.**   Words used in the singular shall include the plural, and vice-versa, and any gender shall be deemed to include the other. The captions and headings contained in this Agreement are for convenience of reference only, and shall not be deemed to define or limit the provisions hereof. Each party acknowledges that such party, after negotiation has reviewed and revised this Agreement. The terms of this Agreement shall be fairly construed and the usual rule of construction, to the effect that any ambiguities herein should be resolved against the drafting party, shall not be employed in the interpretation of this Agreement or any amendments, modifications or exhibits hereto or thereto.

**7.5**   **Counterparts.**   This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which, when taken together, shall be deemed to constitute one and the same instrument. The exchange of copies of this Agreement and of signature pages by facsimile transmission shall constitute effective execution and delivery of this Agreement as to the parties and may be used in lieu of the original Agreement for all purposes. Signatures of the parties transmitted by facsimile shall be deemed to be their original signatures for all purposes.

**7.6**   **Entire Agreement**.   This Agreement and any attachments, schedules and/or exhibits hereto constitute the exclusive and entire agreement between the parties hereto with respect to the subject matter hereof. This Agreement supercedes and replaces all prior understandings, negotiations, commitments, writings and agreements between the parties hereto, whether written or oral, express or implied, with respect to its subject matter. Each party to this Agreement acknowledges that no representations, warranties, inducements, promises or agreements, oral or otherwise, have been made by any party, or anyone acting on behalf of any party, which are not embodied herein.

**7.7**   **Governing Law and Venue**.   The laws of the state of California (without giving effect to its conflicts of laws principles) govern all matters arising out of or relating to this Agreement and all of the transactions it contemplates, including without limitation, its validity, interpretation, construction, performance, and enforcement. Any action or proceeding arising out of or relating to this Agreement or arising out of or in any manner relating to the relationship between the parties shall only be brought in the state or federal courts in San Diego, California, and each of the parties hereto submits to the personal jurisdiction of such court (and of the appropriate appellate courts wherever located) in any such action or proceeding, and selects the courts in San Diego, California for proper venue in any such action or proceeding

**7.8**   **Notices**.   Unless otherwise provided, any notice required or permitted under this Agreement shall be given in writing and shall be deemed effectively given upon personal delivery to the

5

Apr 26 2007 12:31    SPECTRASCIENCE, INC.    858 847 0880    p.6

party to be notified or, if sent by telex or telecopier, upon receipt of the correct answer back, forty-eight (48) hours after deposit with the United States Post Office, by registered or certified mail, or upon deposit with a recognized overnight air courier who requires a signature from recipient, in each case postage prepaid and addressed to the party to be notified at the address indicated for such party on the signature page hereof, or at such other address as such party may designate by ten (10) days' advance written notice to the other parties.

       7.9     **Representation; Advice of Counsel.** The law firm of Fisher Thurber LLP (the "Firm") has prepared this Agreement on behalf of its client, Therapheresis, Inc. ("Client"), based on instructions received from the Client. By his execution of this Agreement, each party hereto other than the Client (i) acknowledges that the Firm does not represent any other party to this Agreement and that the Firm owes no duties to any other party other than the Client and (ii) represents that he has neither requested nor been given legal advice or counsel by the Firm or any of its attorneys. Each party to this Agreement is aware of such party's right to obtain separate legal counsel with respect to the negotiation and execution of this Agreement and acknowledges that the Firm has recommended that each such party retain his own counsel for such purpose. Each party further acknowledges that such party (i) has read this Agreement, including any exhibits or attachments hereto; (ii) has had the opportunity to retain and consult with his own counsel in connection with the negotiation and execution of this Agreement; and (iii) has relied on the advice of his own counsel with respect to this Agreement or made the conscious decision not to retain counsel in connection with such party's negotiation and execution of this Agreement.

       7.10     **Severability.** If any provision of this Agreement is held invalid, illegal or unenforceable for any reason by any court of competent jurisdiction (or, if applicable, an arbitrator), the remaining provisions of this Agreement shall not be affected and shall remain in full force and effect, and this Agreement shall be construed as if such invalid, illegal or unenforceable provision had not been contained in this Agreement. Any provision of this Agreement held invalid, illegal or unenforceable only in part or degree shall remain in full force and effect to the extent not held invalid, illegal or unenforceable.

       7.11     **Successors and Assigns.** The terms and conditions of this Agreement shall inure to the benefit of and be binding on the respective permitted successors and assigns of the parties. Nothing in this Agreement, express or implied, is intended to confer upon any party other than the parties hereto or their respective successors and assignees any rights, remedies, obligations, or liabilities under or by reason of this Agreement, except as expressly provided in this Agreement.

       7.12     **Survival of Warranties.** The warranties, representations and covenants of Purchaser and Seller contained in or made pursuant to this Agreement shall survive the execution and delivery of this Agreement and the Closing.

       7.13     **Exhibits.** The exhibits and schedules attached to this Agreement are hereby incorporated in this Agreement as if fully set forth herein.

*(signature page follows)*

65427.1

XAF  13CR3H5U FHX    ULAHS:6  2007  OE  AdH

Apr 26 2007 12:32    SPECTRASCIENCE, INC.    858 847 0880    p.7

The parties have executed this Stock Purchase Agreement as of the date first written above.

**SELLER**

**PURCHASER**

*Donald T. Wargo* (signature)

Donald T. Wargo

**The Mazepink Family Trust**
Agreed:

9/26/07    By *David Mazepink, Trustee* (signature)
David Mazepink

By *Helen Mazepink, Trustee* (signature)
Helen Mazepink

Address:
7350 Escallonia Court
Carlsbad, CA 92011

Address:
Donald T. Wargo
Wargo Properties, Inc.
C/o Jason Graham
3215 Line Lexington Road
Hatfield, PA 19440-2021

**EXHIBIT A**

**PROMISSORY NOTE**

**PROMISSORY NOTE**

$250,000

April 27, 2007
San Diego, California

FOR VALUE RECEIVED Donald T. Wargo, an individual ("Borrower"), promises to pay to the order of The Mazepink Family Trust (the "Lender"), the principal sum of **Two Hundred Fifty Thousand Dollars ($250,000)** in lawful money of the United States of America.

### 1. Payment Terms

Principal in the amount of $250,000 is due and payable on or before August 1, 2007 ("Maturity Date"). Interest on the note shall accrue at 4% per annum simple interest. Interest shall be paid at the time of payment of the installments on this Promissory Note.

### 2. Installments

Borrower will reduce the principal of the note by no less than $100,000 by the end of August, 2007.

### 3. Event of Default

In the event of loan default by the Borrower, the Seller has the right to sell any outstanding stock. The Borrower will be issued shares equivalent to the amount of paid-in principal at the term of the note and all outstanding interest.

### 4. No Oral Change

This Note may not be modified, amended, waived, extended, changed, discarded or terminated orally or by any act or failure to act on the part of the Borrower or Lender, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

### 5. Applicable Law

This Note shall be governed by the laws of the State of California, excluding its conflict of law rules. The exclusive jurisdiction and venue of any legal action instituted by any party to this Note shall be San Diego County, California.

A

45677.1

### 6. Notices

All notices and other communications under this Note must be in writing and shall be deemed to have been duly given (a) upon delivery by hand (with written confirmation of receipt), (b) one (1) day after deposit with a nationally recognized overnight delivery service (receipt requested), or (c) five (5) days after deposit in the United States mail by certified delivery, return receipt requested. Either party by notice to the other may designate additional or different addresses for subsequent notices or communications. Notices shall be sent in each case to the appropriate addresses indicated for each party below, or at such other place as the parties hereof may from time to time designate in writing:

| | |
|---|---|
| If to Borrower: | Donald T. Wargo |
| | Wargo Properties, Inc. |
| | C/o Jason Graham |
| | 3215 Line Lexington Road |
| | Hatfield, PA 19440-2021 |
| | |
| If to Lender: | The Mazepink Family Trust |
| | C/o David Mazepink |
| | 7350 Escallonia Court |
| | Carlsbad, CA 92011 |

### 7. Severability

If any part, clause, or condition of this Note is held to be partially or wholly invalid, unenforceable, or inoperative for any reason whatsoever, such shall not affect any other provision or portion hereof, which shall continue to be effective as though such invalid, inoperative, or unenforceable part, clause or condition had not been made.

### 8. Successors and Assigns

This Note shall bind Borrower and his successors and assigns.

**IN WITNESS WHEREOF**, Borrower has duly executed this Note as of the day and year first above written.

**BORROWER**

By: _Donald T. Wargo_ (signature)
Donald T. Wargo, individually

B

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

The Mazepink Family Trust

**(b)** County of Residence of First Listed Plaintiff    San Diego
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Law Offices of Todd B. Serota, 1601 N. Sepulveda Blvd., #793, Manhattan Beach, CA 90266 (310) 798-2004

## DEFENDANTS

Donald T. Wargo; Does 1 - 10

08 SEP -4 PM 3: 44

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

Attorneys (If Known)    '08 CV 1624 WQH LSP    BY FAX

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government
        Plaintiff

☐ 2  U.S. Government
        Defendant

☐ 3  Federal Question
        (U.S. Government Not a Party)

☒ 4  Diversity
        (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                                      and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | ☐ 820 Copyrights | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 830 Patent | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 864 SSID Title XVI | ☐ 875 Customer Challenge |
| ☒ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 865 RSI (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | **FEDERAL TAX SUITS** | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 870 Taxes (U.S. Plaintiff | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | or Defendant) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 871 IRS—Third Party | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | **IMMIGRATION** | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 462 Naturalization Application | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | ☐ 463 Habeas Corpus - | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | Alien Detainee | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | ☐ 465 Other Immigration | ☐ 950 Constitutionality of |
| | Other | | | Actions | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original
        Proceeding

☐ 2 Removed from
        State Court

☐ 3 Remanded from
        Appellate Court

☐ 4 Reinstated or
        Reopened

☐ 5 Transferred from
        another district
        (specify)

☐ 6 Multidistrict
        Litigation

☐ 7 Appeal to District
        Judge from
        Magistrate
        Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. Section 1332

Brief description of cause:
Breach of contract; fraud and deceit

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
    UNDER F.R.C.P. 23

**DEMAND $**
$250,000 +

CHECK YES only if demanded in complaint:
**JURY DEMAND:**    ☒ Yes    ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):    JUDGE _____    DOCKET NUMBER _____

DATE
09/03/2008

SIGNATURE OF ATTORNEY OF RECORD
Todd B. Serota

**FOR OFFICE USE ONLY**

RECEIPT # 154698    AMOUNT $350    APPLYING IFP ___    JUDGE ___    MAG. JUDGE ___

TAC 9/4/08

☐ ORIGINAL



**UNITED STATES
DISTRICT COURT**
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

**# 154698   — TC**

**September 04, 2008
15:48:31**

**Civ Fil Non-Pris**
USAO #.: 08CV1624
Judge..: WILLIAM Q HAYES
Amount.:                        $350.00 CK
Check#.: BC21479

**Total—> $350.00**

FROM: MAZEPINK FAMILY TRUST
      VS
      DONALD T. WARGO